JUDGE CASTEL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

14 CV 1679

------------------------------------------------------------X   Case No.

JOHN HOCKENJOS, JR.,

                          Plaintiff,                          **COMPLAINT**

          - against -

                                                              **PLAINTIFF DEMANDS**
                                                              **A TRIAL BY JURY**
METROPOLITAN TRANSPORTATION AUTHORITY,
MTA METRO-NORTH RAILROAD, HOWARD R.
PERMUT, *Individually*, JOHN E. KENNARD, *Individually*,
KIM A. SMITH, *Individually*, and BRUCE M. POLLACK,
*Individually*,

                          Defendants.

RECEIVED
MAR 11 2014
U.S.D.C. S.D.N.Y.
CASHIERS

------------------------------------------------------------X

    Plaintiff, JOHN HOCKENJOS, JR., by his attorneys, PHILLIPS & ASSOCIATES,

Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as

follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et*

      *seq.* ("FMLA") and the New York City Human Rights Law, Administrative Code § 8-107

      *et seq.* ("NYCHRL"), and seeks to recover lost wages, emotional distress, punitive

      damages, reasonable attorneys' fees and costs as a result of being **Discriminated against**

      and **Terminated** by his employer solely due to his **Disability (Acute Stress Disorder)**

      and in **Retaliation for Exercising his Rights under the FMLA.**

2.    Plaintiff also brings this action pursuant to New York Labor Law §740, *et. seq.*, and

      complains that Defendants unlawfully terminated his employment in retaliation for

      complaining about, and reporting, Defendants' numerous violations of law governing,

including but not limited to, **the handling and storage of hazardous substances**.

## JURISDICTION AND VENUE

3.    Jurisdiction of this Court is proper under 29 U.S.C. §2617, 28 U.S.C. §§1331 and 1343.

4.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

## PARTIES

6.    That at all times relevant hereto, Plaintiff JOHN HOCKENJOS, JR. ("HOCKENJOS") is a resident of the State of New York and County of Kings.

7.    That at all times relevant hereto, Defendant METROPOLITAN TRANSPORTATION AUTHORITY ("MTA") is a New York State public benefit corporation, with its principle place of business located at 347 Madison Avenue, New York, New York 10017.

8.    That at all times relevant hereto, Defendant MTA METRO-NORTH RAILROAD ("METRO-NORTH") is a wholly-owned subsidiary of Defendant MTA, with its principle place of business located at 347 Madison Avenue, New York, New York 10017.

9.    That at all times relevant hereto, Plaintiff HOCKENJOS was a full-time employee of Defendant MTA and Defendant METRO-NORTH.

10.   That at all times relevant hereto, upon information and belief, Defendant MTA and Defendant METRO-NORTH are "integrated employers," as they have common management, share financial control of both companies, share centralized control of labor

2

relations, and share employees.

11. That at all times relevant hereto, Defendant HOWARD R. PERMUT ("PERMUT") was an employee of Defendant MTA and Defendant METRO-NORTH, holding the positions of "Senior Vice President – Planning Division" and "President of Metro-North Railroad."

12. That at all times relevant hereto, Defendant PERMUT was Plaintiff HOCKENJOS's supervisor and/or had supervisory authority over Plaintiff HOCKENJOS.

13. That at all times relevant hereto, Defendant JOHN E. KENNARD ("KENNARD") was an employee of Defendant MTA and Defendant METRO-NORTH, holding the position of "Senior Director of Capital Planning and Programming Department."

14. That at all times relevant hereto, Defendant KENNARD was Plaintiff HOCKENJOS's supervisor and/or had supervisory authority over Plaintiff HOCKENJOS.

15. That at all times relevant hereto, Defendant KIM A. SMITH ("SMITH") was an employee of Defendant MTA and Defendant METRO-NORTH, holding the position of "Deputy Director of Capital Planning and Programming Department."

16. That at all times relevant hereto, Defendant SMITH was Plaintiff HOCKENJOS's supervisor and/or had supervisory authority over Plaintiff HOCKENJOS.

17. That at all times relevant hereto, Defendant BRUCE M. POLLACK ("POLLACK") was an employee of Defendant MTA and Defendant METRO-NORTH, holding the position of "Employee Assistance Program Manager."

18. That at all times relevant hereto, Defendant POLLACK was Plaintiff HOCKENJOS's supervisor and/or had supervisory authority over Plaintiff HOCKENJOS.

19. That at all times relevant hereto, Defendant MTA, Defendant METRO-NORTH, Defendant PERMUT, Defendant KENNARD, Defendant SMITH, and Defendant

POLLACK are collectively referred to herein as "Defendants."

20. Upon information and belief, Defendants employ fifty (50) or more employees within a seventy-five (75) mile radius.

21. Plaintiff HOCKENJOS was an "eligible" employee under the FMLA when he took his medical leave of absence, as he had been employed by Defendants for at least twelve (12) months and worked at least 1,250 hours within the past twelve (12) months.

22. The FMLA defines an "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer." 29 U.S.C. 26114(A)(ii)(i).

23. The Department of Labor regulations extend individually liability for FMLA violations to "corporate officers acting in the interest of an employer." 29 CFR 825.104(d).

## MATERIAL FACTS

24. On or about December 28, 1998, Plaintiff HOCKENJOS began working for Defendants in a position that evolved into a "Senior Engineer" in Defendants' Capital Planning and Programming Department, earning approximately $95,000 per year.

25. Throughout Plaintiff HOCKENJOS's employment with Defendants, Plaintiff HOCKENJOS was an exceptional employee, was never reprimanded, and always received compliments for his work performance. In fact, Plaintiff HOCKENJOS's previous three (3) performance evaluations were all positive.

26. **However, in or about February 2012, after almost fifteen (15) years of employment, everything suddenly changed when Plaintiff HOCKENJOS informed Defendants that he was diagnosed with "Acute Stress Disorder," and as a result, would need a**

4

<u>reasonable accommodation for his disability.</u>

27.   <u>Moreover, Defendants then terminated Plaintiff HOCKENJOS's employment not</u>
      <u>only due to his disability, but also in retaliation for complaining that Defendants</u>
      <u>were in violation of health and safety laws governing, including but not limited to,</u>
      <u>the handling and storage of hazardous substances</u>.

28.   "Acute Stress Disorder" is a psychological condition arising in response to a terrifying or
      traumatic event.  It is the result of a traumatic event in which the person experiences an
      event that causes the victim to experience extreme, disturbing or unexpected fear, stress
      or pain, and that involves or threatens serious injury, perceived serious injury or death to
      themselves or someone else.

29.   By way of background, on or about February 5, 2012, Plaintiff HOCKENJOS was falsely
      arrested and falsely imprisoned by the New York City Police Department ("NYPD") and
      thereafter maliciously prosecuted by the Kings County District Attorney's office.

30.   As a result of this despicable and traumatizing experience, beginning in or about February
      2012, Plaintiff HOCKENJOS explained to Defendant SMITH that his internist, Dr. Irena
      Pleskova, MD, had preliminarily diagnosed him with "Acute Stress Disorder," which was
      causing Plaintiff HOCKENJOS difficulty concentrating for extended periods of time.

31.   As such, Plaintiff HOCKENJOS requested that, as a reasonable accommodation for his
      disability, Defendant SMITH take more time to explain tasks to Plaintiff HOCKENJOS
      and give Plaintiff HOCKENJOS more time to accomplish tasks.  However, without
      asking any questions or requesting additional information, <u>Defendant SMITH simply</u>
      <u>refused to even consider an accommodation for Plaintiff HOCKENJOS</u>.

32.   As a result, in or about May 2012, Plaintiff HOCKENJOS met with Defendants'

Employee Assistance Program ("EAP") Manager, Defendant POLLACK, for the purpose of discussing and working out a possible accommodation for Plaintiff HOCKENJOS's disability.

33.    However, when Plaintiff HOCKENJOS met with Defendant POLLACK, Defendant POLLACK told Plaintiff HOCKENJOS that his difficulties in concentration were "unacceptable" and **refused to even consider an accommodation for Plaintiff HOCKENJOS**.

34.    In or about June 2012, feeling as if he had nothing to lose, Plaintiff HOCKENJOS again met with Defendant POLLACK during which Plaintiff HOCKENJOS begged Defendant POLLACK for an accommodation for his disability.    More specifically, Plaintiff HOCKENJOS asked that Defendant SMITH take more time to explain tasks to Plaintiff HOCKENJOS and give Plaintiff HOCKENJOS more time to accomplish specific tasks.

35.    However, Defendant POLLACK insisted that he had "no choice but to increase productivity as quickly as possible so [Defendant SMITH] can measure and report these improvements to upper management," completely **ignoring Plaintiff HOCKENJOS's disability and repeated requests for an accommodation**.

36.    No matter how many times Plaintiff HOCKENJOS pleaded with Defendant POLLACK for some form of accommodation due to his "Acute Stress Disorder," Defendant POLLACK simply ignored Plaintiff HOCKENJOS as if no disability ever existed. Defendant POLLACK even rejected and refused to accept any medical records from Plaintiff HOCKENJOS to verify his disability, and in fact, Defendant POLLACK only made Plaintiff HOCKENJOS feel even more anxious and less capable to cope with his "Acute Stress Disorder."

37.   Accordingly, as a result of Defendants refusing to accommodate his disability, Plaintiff HOCKENJOS's condition only worsened, and on or about September 4, 2012, Plaintiff HOCKENJOS was forced to finally request a medical leave of absence pursuant to the FMLA.

38.   More specifically, on or about September 4, 2012, Plaintiff HOCKENJOS provided Defendants with an FMLA Application Form, completed by Plaintiff HOCKENJOS's doctor, Dr. Irena Pleskova, MD, on which she requested that Plaintiff HOCKENJOS be given "3 weeks off his job" because due to Plaintiff HOCKENJOS's "acute stress disorder and anxiety," he is "unable to concentrate, has shortness of breath, chest pains, hallucinations, dizziness, insomnia, and nightmares."

39.   Fortunately, Defendants granted this request and **from on or about September 10, 2012 through on or about October 1, 2012, Plaintiff HOCKENJOS was out on an approved medical leave pursuant to the FMLA.**

40.   In or about September 2012, while Plaintiff HOCKENJOS was out on FMLA leave, he began meeting with a psychologist, Dr. Moses Weksler, PhD, for treatment of his "Acute Stress Disorder."

41.   **On or about January 16, 2013, Plaintiff HOCKENJOS complained to Defendant SMITH and Defendant KENNARD that Defendants were in violation of the New York State Building Code ("NYSBC")** §1015.1(2) (Exit or exit access doorways), §1028.2 (Reliability), §1028.3 (Obstructions), §1003.6 (Means of egress continuity), §1009.1(1) (Stairway width), §1009.3 (Stair treads and risers), §1019.1 (Minimum number of exits), and §403.2 (Outdoor air required).   More specifically, Plaintiff HOCKENJOS complained that the aforementioned statutes were being ignored and

violated at the following facilities:

    a. Electrical Substation A-13 at Riverdale, New York – Mezzanine Level
    b. Electrical Substation A-34 at Croton Harmon, New York – Mezzanine Level
    c. Electrical Substation B-25 at North White Plains, New York – Mezzanine Level
    d. Shell Tower on the New Haven Line in New Rochelle, New York
    e. Grand Central Terminal inside the Upper Level Trainshed – Tower U
    f. Grand Central Terminal – Pipe Storage, Shop and Miscellaneous Offices under the block area floor of the Upper Level Concourse at track level

42. Plaintiff HOCKENJOS also complained to Defendant SMITH and Defendant KENNARD about violations of:

    a. Chapters 2 and 5 of the NYSDOT Highway Design Manual;
    b. American Association of State Highway and Transportation Officials (AASHTO) Green Book (1994) - Pgs. 126-127, Sect. on Decision Sight Distance; Pg. 573, Para. 4; Pgs. 904-907, Sect. on Auxiliary Lanes; Pg. 920, Para. 5; Pgs. 937-939, Sects. on Left-Hand Exits & Traffic Control; Pgs. 941-944, Sects. on Speed-Change Lanes & Single-Lane Free-Flow and Entrances and Pgs. 944-961, Portion of Sect. on Single-Lane Free-Flow Terminals, Exits;
    c. Traffic Engineering Handbook (1999) - Pgs. 319-322, Sect. on Deceleration and Acceleration Rates; Pg. 375, Sect. on Decision Sight Distance (DSD) and Pg. 393, Item 6; and
    d. Manual on Uniform Traffic Control Devices (MUTCD (2000)) - Sect. 2C.10 & 3D.03, as the acceleration and deceleration lanes to Interstate 95 (I-95) at milepost 12.9 were missing at the Pike Tower on the New Haven Line, milepost 12.9. More specifically, the Pike Tower on the New Haven Line is missing the vehicular access to/from the Signal Employees Daily Reporting Headquarters and Maintenance Dispatch Facility that services the railroad's vital CP interlockings and whose specific access is deficient and missing critical change of speed access lanes to/from I-95.

43. Plaintiff HOCKENJOS even recommended that Defendants immediately relocate the Pike Tower Signal Headquarters due to extreme human life safety concerns to a location that provides safe employee access and avoids normal operations that include the everyday dangerous and illegal ingress/egress directly to/from I-95 with no legitimate or realistic means of safely merging or exiting vehicles to/from the vehicular traffic on I-95 moving at posted highway speeds of 55 miles per hour.

8

44.   Plaintiff HOCKENJOS also complained to Defendant SMITH and Defendant KENNARD that Defendants were in violation of New York State Department of Environmental Conservation Regulations (6 NYCCR §598.1(g)(1),(2),(3), 6 NYCCR §598.5(d)(1), 6 NYCCR §599.17(c)(1), and 6 NYCCR §599.17(c)(2)) **concerning the handling and storage of hazardous substances**. Plaintiff HOCKENJOS recommended that Defendants change train operation schedules to include refueling of locomotives at other locations with legal fuel spill containment fuel transfer stations.

45.   These requirements were put into place to protect the health and safety of workers, as well as the general public, from unnecessary harm and dangers, and Defendants persistently disregarded each and every one.

46.   On or about February 7, 2013, Diego Palacios (the former NYPD officer who falsely arrested and imprisoned Plaintiff HOCKENJOS) pled guilty to a single charge of "PL 210.35 Making an Apparently Sworn False Statement in the Second Degree" (Class A Misdemeanor) and was sentenced to only four (4) days in jail while spending only one (1) night in jail. Given Plaintiff HOCKENJOS's grave concern for his safety and security, the symptoms of his disability were greatly exacerbated, forcing Plaintiff HOCKENJOS to request a second medical leave of absence pursuant to the FMLA.

47.   More specifically, on or about February 12, 2013, Plaintiff HOCKENJOS provided Defendants with another FMLA Application Form, this time completed by Plaintiff HOCKENJOS's psychologist, Dr. Moses Weksler, PhD, on which he requested that Plaintiff HOCKENJOS be given "fifteen (15) working days of FMLA leave" because Plaintiff HOCKENJOS "is depressed, very anxious," and suffers from "crying episodes, insomnia with nightmares, and fearful."

48.   Defendants granted this request and **from on or about February 25, 2013 through on or about March 19, 2013, Plaintiff HOCKENJOS was out on an approved medical leave pursuant to the FMLA.**

49.   On or about March 20, 2013, upon Plaintiff HOCKENJOS's return from FMLA leave, Defendant SMITH immediately summoned Plaintiff HOCKENJOS to a meeting with herself, Defendant KENNARD, and one of Defendants' Human Resources Representatives.

50.   **When Plaintiff HOCKENJOS arrived at the meeting, without any warning, Defendants suddenly terminated Plaintiff HOCKENJOS's employment.** While Plaintiff HOCKENJOS asked for the reason he was suddenly being terminated the day he returned from FMLA leave, no one was able to answer, but after pressing them with the same question, **Defendant SMITH finally answered "the decision was made by me, [Defendant KENNARD] and [Defendant PERMUT]."**

51.   Then, when asked more for the reasons his employment was being terminated, Defendants' Human Resources Representative responded, **"We are not going to get into the details. The purpose of this meeting is to communicate to you that you are no longer employed with MTA – Metro-North Railroad. The decision is only business and it has nothing to do with anything else."**

52.   It is rather suspect that Defendants terminated Plaintiff HOCKENJOS's employment on the day he returned from FMLA leave and then refused to even advise Plaintiff HOCKENJOS on any of the purported reasons they were terminating his employment.

53.   Based upon the aforementioned suspicious actions, it is clear that Defendants discriminated against, and terminated the employment of, Plaintiff HOCKENJOS solely

due to his disability, in retaliation for taking two (2) medical leaves of absence pursuant to the FMLA, and in retaliation for his complaints about Defendants' violations of various laws, rules, regulations, which violations create and present a substantial and specific danger to the public health or safety.

54.    All of Plaintiff HOCKENJOS's health and safety complaints were ignored and ultimately became a reason to terminate Plaintiff HOCKENJOS because he would not "comply or tow the company line" to continue the unsafe practices.

55.    As of the date of Plaintiff HOCKENJOS's termination, Plaintiff HOCKENJOS had only used six (6) out of a total of at least twelve (12) weeks to which he was entitled under the FMLA.   There is simply no legitimate reason for which Defendants could have terminated Plaintiff HOCKENJOS's employment other than due to his disability and in retaliation for exercising his rights and actually going out on FMLA leaves.

56.    Defendants obviously did not like the fact that Plaintiff HOCKENJOS took six (6) weeks of FMLA leave, and thus unlawfully terminated his employment in retaliation.

57.    Defendants terminated Plaintiff HOCKENJOS's employment because Defendants did not want to allow Plaintiff HOCKENJOS to take the full twelve (12) weeks of leave for his serious health condition, in violation of the FMLA.

58.    Defendants failed to allow Plaintiff HOCKENJOS to return to the same or equivalent position he held following his leave for a serious medical condition.

59.    Moreover, rather than attempting to accommodate Plaintiff HOCKENJOS's disability, Defendants figured it was easier to simply terminate Plaintiff HOCKENJOS's employment.

60.    Furthermore, Defendants never even attempted to engage in any interactive process to try

and figure out a way to accommodate Plaintiff HOCKENJOS's disability in a way that would enable him to continue his employment with Defendants.

61. Defendants were also apparently apprehensive about keeping a disabled employee due to potential future doctors' appointments and future accommodations.

62. Defendants clearly but falsely believed that Plaintiff HOCKENJOS's disability would interfere with his ability to perform his job duties in the future.

63. **But for the fact that Plaintiff HOCKENJOS was disabled, exercised his rights under the FMLA, and reported the health and safety violations, Defendants would not have terminated his employment.**

64. Plaintiff HOCKENJOS felt exceedingly offended, emotionally distressed, disturbed, and humiliated by this blatantly unlawful, discriminatory, and retaliatory termination.

65. After Defendants terminated Plaintiff HOCKENJOS's employment, the severity of Plaintiff HOCKENJOS's symptoms was extremely exacerbated and Plaintiff HOCKENJOS was even further diagnosed with "Major Depressive Disorder."

66. Plaintiff HOCKENJOS's performance was, upon information and belief, above average during the course of his employment with Defendants.

67. Plaintiff HOCKENJOS has been unlawfully discriminated against, humiliated, retaliated against, has been degraded, and as a result, suffers loss of rights, emotional distress, loss of income, earnings, and pension.

68. **Defendants' actions and conduct were intentional and intended to harm Plaintiff HOCKENJOS.**

69. As a direct result of Defendants' actions, Plaintiff HOCKENJOS feels extremely humiliated, degraded, victimized, embarrassed, intimidated, and emotionally distressed.

70.   As a result of Defendants' discriminatory and retaliatory treatment of Plaintiff HOCKENJOS, he has suffered severe emotional distress and physical ailments.

71.   As a result of the acts and conduct complained of herein, Plaintiff HOCKENJOS has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, pension payments, and other compensation which such employment entails, and Plaintiff HOCKENJOS has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff HOCKENJOS further experienced severe emotional and physical distress.

72.   As a result of the above, Plaintiff HOCKENJOS has been damaged in an amount in excess of the jurisdiction of the Court.

73.   Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff HOCKENJOS demands Punitive Damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR INTERFERENCE AND RETALIATION UNDER
### THE FAMILY AND MEDICAL LEAVE ACT

74.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

75.   Section 2612(D) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period … Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

76.   Section 2615(a) of the Family Medical Leave Act, states in pertinent part: "Interference

13

with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

77.   Defendants discriminated against Plaintiff in retaliation for exercising his rights under the FMLA.

78.   As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80.   The New York City Administrative Code §8-107 (1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or an agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

81.   Defendants violated the section cited herein as set forth.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above

14

paragraphs of this Complaint as if more fully set forth herein at length.

83.  The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

84.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86.  The New York City Administrative Code §8-107(13) **Employer liability** for discriminatory conduct by employee, agent or independent contractor.

  a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

  b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

  i.  the employee or agent exercised managerial or supervisory responsibility; or

  ii.  the employer knew of the employee's or agent's discriminatory

conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.     An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an **independent contractor**, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

87.   Defendants violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

88.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89.   The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

90.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW §740

91.   Plaintiff hereby repeats and realleges each allegation contained herein in all above paragraphs number as if more fully set forth herein.

92.   Pursuant to New York State's Labor Law § 740 entitled, "Retaliatory personnel action by employers; prohibition" states in pertinent part as follows:

2. Prohibitions. An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:

(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud;

(b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or

(c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

4. Violation; remedy.

(a) An employee who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action in a court of competent jurisdiction for relief as set forth in subdivision five of this section within one year after the alleged retaliatory personnel action was taken.

93.   Defendants acted in an unlawful and retaliatory manner following Plaintiff's disclosure to his supervisors violations which presented a substantial and specific danger to the public health or safety, and/or Plaintiff's disclosure of information to public bodies conducting

an investigation, hearing or inquiry into such violation of a law, rule or regulation by such employer, and/or Plaintiff's refusal to participate in any such activity, policy or practice in violation of a law, rule or regulation.

94.    Plaintiff disclosed to his supervisors the many violations of law and was subsequently terminated as a result of his disclosures.

## JURY DEMAND

95.    Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* the New York City Administrative Code §8-107 *et seq.*, and the New York State's Labor Law §740 *et. seq.*, by discriminating against Plaintiff on the basis of his disability and then unlawfully terminating his employment due to his disability, in retaliation for exercising his rights under the FMLA, and in retaliation for complaining about violations of law which presented a substantial and specific danger to the public health or safety;

B.  Awarding damages to Plaintiff for all lost wages and benefits, including pension, resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       March 10, 2014

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By:

Alex Umansky, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
aumansky@tpglaws.com
